# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| DORA SUGRANEZ, | \* | No. 19-1183V |
| | \* | |
| Petitioner, | \* | |
| | \* | Special Master Christian J. Moran |
| v. | \* | |
| | \* | Filed: May 29, 2026 |
| SECRETARY OF HEALTH | \* | |
| AND HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Phyllis Widman, Widman Law Firm, LLC, Linwood, NJ, for petitioner;
Madelyn Weeks, United States Dep't of Justice, Washington, DC, for respondent.

### DECISION DENYING ENTITLEMENT TO COMPENSATION[1]

Dora Sugranez alleges that her receipt of an influenza ("flu") vaccine and/or a pneumococcal vaccine injured her shoulder. She is pursuing two causes of action: first, that she satisfies the regulatory definition for an on-Table injury known as "shoulder injury related to vaccine administration" ("SIRVA") and second, that the vaccinations were the cause-in-fact of her shoulder problem. Ms. Sugranez supports her claim with reports from an orthopedist, David Anapolle. Ms. Sugranez also advances arguments through four briefs.

The Secretary opposes an award of compensation. In support of his position, the Secretary relies upon opinions from an orthopedist, Paul Cagle. The Secretary defends his position in two briefs.

Ms. Sugranez has not established that she is entitled to compensation. As to her primary claim that she suffered SIRVA, the evidence does not support that finding. Rather, the evidence shows that in the days immediately following the flu vaccination, she suffered cellulitis. As to

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

the alternative, cause-in-fact claim, Ms. Sugranez has not shown that she suffered an infection in her bursa as her expert's theory predicted. Thus, she is not entitled to compensation.

I.    **Events in Ms. Sugranez's Life**

A.    **Before Vaccination**

Ms. Sugranez was born in 1942. Before she received the vaccination at the age of 76 years, Ms. Sugranez worked at the Atlantic City Community College, teaching students how to deal cards. Exhibit 16 (damages aff., dated Oct. 4, 2021) ¶ 5. She stayed active by bowling, running, swimming and riding a bicycle. Id. ¶ 2; see also Pet'r's Br., filed May, 9, 2023, at 1 (describing her as "a lively and energetic individual with more zest for life than the average 80-year old).

In November 2017, Ms. Sugranez received a dose of the flu vaccine. Ex. 1 at 2; Ex. 4 at 90. Although Ms. Sugranez averred that after this vaccination she had left shoulder pain (Exhibit 15 (aff., dated Mar. 5, 2021) ¶ 3), she has not sought compensation based upon the 2017 flu vaccination.

Ms. Sugranez sought treatment from a family medicine physician, Barry Glasser, on February 28, 2018. She complained about pain from the left side of her neck down through her arm. Exhibit 4 at 76. When Dr. Glasser examined her, he found tenderness to palpation over her cervical spine and left trapezoid. Id. at 76. An X-ray showed moderate to marked disc space narrowing. Id. at 80. Dr. Glasser prescribed a medication, cyclobenzaprine, and recommended that she follow up with a physiatrist. Id. at 78. Cyclobenzaprine is given to relax painful muscle spasms. Dorland's Illus. Med. Dict. 450 (33rd ed.).

Ms. Sugranez saw an interenist, Michael Dunn, on March 5, 2018. She reported "several months" of left shoulder pain that was "improving but still fairly intense." Exhibit 4 at 83. Dr. Dunn assessed Ms. Sugranez as suffering from left shoulder pain and cervicalgia. He gave her a steroid injection into her left shoulder. Exhibit 4 at 84. In a follow up visit, Ms. Sugranez reported that her pain had improved. Id. at 90-91 (Apr. 2, 2018). Later, Dr. Dunn wrote that the steroid injection improved her condition. Exhibit 12 (letter, dated Apr. 2, 2020).

The doctors whom the parties retained in the litigation differ about the duration of Ms. Sugranez's left shoulder pain. See Exhibit 26 (Dr. Anapolle's second report) at 1; Exhibit A (Dr. Cagle's report) at 6. The differences stem, in part, from additional medical records in which Ms. Sugranez sought care for a productive cough (Exhibit 4 at 97-98 (May 5, 2018)) and a bug bite (Exhibit 4 at 101-02 (June 13, 2018)). These May 5, 2018 and June 13, 2018 medical records list left shoulder pain as a problem.

B.    **Vaccination and Ensuing Month**

Ms. Sugranez received the flu and pneumococcal vaccines in her left arm on August 26, 2018. Exhibit 1 at 1. Ms. Sugranez avers that: "According to the CDC if multiple vaccines are administered at a single visit, each injection should be given in a different site. Unfortunately for me the vaccine administrator did not follow the proper protocol." Exhibit 15 ¶ 2 n.1. Whether

the administrator complied with the standard of care is not relevant to the outcome of Ms. Sugranez's claim in the Vaccine Program because petitioners here are not required to establish negligence.

Ms. Sugranez avers that "immediately" after her vaccinations, she felt pain and began "screaming in pain at the pharmacy." Exhibit 15 (aff., dated Mar. 5, 2021) ¶ 6; see also Exhibit 2 (aff., dated Apr. 2, 2019) ¶ 3. A record memorializing "screaming" at the pharmacy is not readily apparent within the documents filed as exhibits.

Five days after the vaccination, Ms. Sugranez told a doctor at the same practice as Dr. Dunn, Dr. Glasser, that she had redness and swelling in her left arm for four days. Exhibit 4 at 112 (Aug. 31, 2018). She also had dizziness and chills. Id. Dr. Glasser's examination revealed a large erythematous patch on her left upper arm below the site of her flu vaccination. Id. at 113. She did not have tenderness. Dr. Glasser assessed Ms. Sugranez as suffering from cellulitis. Id. at 114. Cellulitis is "an acute, diffuse, spreading, edematous, suppurative inflammation of the deep subcutaneous tissues and sometimes muscle. . . . It is usually caused by a wound . . . by bacteria." Dorland's Illus. Med. Dict. 321 (33rd ed.); accord Exhibit 5 at 27 (instructions for patient about cellulitis). Other assessments included pain in the left shoulder and cervicalgia. Exhibit 4 at 114. Dr. Glasser prescribed Keflex and also recommended Tylenol and Benadryl. Keflex is an antibiotic for skin infections. See Dorland's at 325 (defining cephalexin) and at 966 (defining Keflex as a trademark for preparations of cephalexin).

The next day, Ms. Sugranez sought care at the emergency department for arm pain and swelling. Exhibit 5 at 23 (Sep. 1, 2018). She stated that although she had taken two doses of Keflex, she had not improved. The doctor diagnosed her with cellulitis, arm pain, and swelling. Ms. Sugranez was given a prescription for doxycycline. Id. at 25. Doxycycline is a broad-spectrum antibiotic. Dorland's at 559.

Ms. Sugranez returned to this emergency department the next day. She reported that she had new pain around her left elbow. Her left arm pain and redness had progressed. Exhibit 5 at 104. This time, Ms. Sugranez was "admitted for cellulitis that failed outpatient antibiotics." Id.

In the hospital, various doctors treated Ms. Sugranez. Dr. Igor Oliveria found that she had "left arm rash and pruritus" but did not have joint pain. Exhibit 5 at 108 (Sep. 3, 2018). Another physical examination showed that Ms. Sugranez had normal range of motion and normal strength. Her erythema significantly improved. Id. at 112.

Ms. Sugranez was discharged from the hospital on September 5, 2018, after four days of treatment with vancomycin. Exhibit 5 at 115. Dr. Oliveria stated that Ms. Sugranez's "redness is greatly improved and no swelling [is] appreciated." Id. at 117. He instructed her to continue her treatment with Bactrim for five days and to follow up with her primary care physician in one week. Bactrim is another antibiotic. See Dorland's at 191 (defining Bactrim as a trademarked preparation of trimethoprim and sulfamethoxazole), at 1771 (defining sulfamethoxazole) at 1937 (defining trimethoprim).

The follow-up appointment with Dr. Dunn occurred three weeks later. Exhibit 4 at 128 (Sep. 23, 2018). Ms. Sugranez told Dr. Dunn that her pain was worse, and she still had swelling and tenderness in her left upper arm. Id. at 129. Dr. Dunn referred her to a specialist in infectious diseases and a specialist in pain management. Id. at 130.

A specialist in pain management, Denise Scaringe-Dietrich, saw Ms. Sugranez on September 24, 2018. Ms. Sugranez stated that she was having pain "in her neck which radiates down her left arm." Exhibit 6 at 4. On examination, Dr. Scaringe-Dietrich detected decreased range of motion in her cervical and lumbar spine, tenderness and spasticity in her paraspinous muscle, and decreased range of motion in her left shoulder with tenderness over the proximal arm. Id. at 4-5. Dr. Scaringe-Dietrich diagnosed Ms. Sugranez as having pain in her left shoulder, neuritis, and myalgia. Dr. Scaringe-Dietrich prescribed physical therapy. She also prescribed two medications, tramadol and tizanidine. Tramadol is a medication for pain. Dorland's at 1920. Tizanidine treats muscle spasticity. Dorland's at 1903.

The first physical therapy appointment was on September 27, 2018. Exhibit 7 at 2. Ms. Sugranez reported "that after receiving a flu shot injection she had a painful reaction including swelling in her arm that she was reportedly told was cellulitis." Id. The physical therapist determined that she had mild redness and discomfort on palpation. The physical therapist also assessed her as having limited range of motion in her left arm.

## C.    Remainder of 2018

Ms. Sugranez continued to see medical professionals during 2018. For example, she attended physical therapy periodically until November 14, 2018. When she stopped physical therapy, her range of motion was normal. Her pain was rated as a 3 out of 10. Exhibit 7 at 43-45.

At a return visit with the pain specialists, Ms. Sugranez stated that she had "sharp pain isolated to the bicep region." Exhibit 6 at 3 (Nov. 21, 2018). Her pain had also increased to a level of 5-6 out of 10.

## D.    Medical Records from 2019, including Imaging Studies

On January 7, 2019, Ms. Sugranez saw an infectious disease specialist, Christopher Lucasti. Exhibit 3 at 5. Ms. Sugranez reported that she developed cellulitis after receiving a flu vaccination, and her "left upper arm [was] still painful and bothering her." Id. Dr. Lucasti noted that Ms. Sugranez's skin was normal without any evidence of cellulitis, and he "suspect[ed] that the immunizations may have caused some nerve damage and that may [be] the cause of her pain," but an MRI was "needed to rule out infection." Id.

A left humerus MRI performed on January 11, 2019, was normal, with no soft tissue or osseous injury at the site where Ms. Sugranez identified symptoms. Id. at 4. More specifically, the MRI showed "[n]o subcutaneous edema, fluid collection, or soft tissue mass, including the site of patient identified symptoms," "[n]o muscle edema, strain or tear," "[n]o significant tendinosis, tear or tenosynovitis," and "[n]o abnormal osseous enhancement." Id.

On February 5, 2019, Ms. Sugranez presented to Rothman Orthopedics, where she saw Dennis Nutini. Exhibit 9 at 10. Ms. Sugranez reported that after a flu vaccination six months earlier, she developed left lateral arm pain. Id. Upon exam, Ms. Sugranez had full range of motion in both shoulders but a painful arc on the left side and positive Hawkins' and Neer's tests. Id. Dr. Nutini concluded that Ms. Sugranez "had a painful injection from the flu shot that became infected. She then did not move the arm much and wound up with rotator cuff impingement." Id. at 11. Dr. Nutini administered a steroid injection and advised Ms. Sugranez to follow up in two weeks. Id.

Ms. Sugranez returned to Dr. Nutini on March 8, 2019, reporting "some relief at rest" but pain when abducting her arm. Exhibit 9 at 8. On exam, she had full range of motion in her left shoulder but positive Hawkins' and Neer's tests. Id. Dr. Nutini ordered a left shoulder MRI.

The left shoulder MRI was performed on March 15, 2019, and revealed calcific tendinosis of the supraspinatus tendon, fraying of the supraspinatus and infraspinatus tendons, "mild induration without fluid distention of the subacromial and subdeltoid bursa in keeping with mild bursitis," tendinosis of the intra-articular biceps tendon "without tear or dislocation," and acromioclavicular joint arthritis with mild spurring. Exhibit 9 at 13-14.

To discuss her MRI results, Ms. Sugranez saw Dr. Nutini on April 5, 2019. Exhibit 9 at 5. She had full range of motion; however, she reported a painful arc and she had positive Hawkins and Neer's tests. Id. at 5-6. Dr. Nutini's assessment was "left rotator cuff impingement/tendinopathy with some calcific tendinitis . . . as well as subacromial bursitis." Id. Dr. Nutini administered a subacromial steroid injection. Id.

Ms. Sugranez returned to Dr. Nutini on April 26, 2019 and reported only a 50% improvement in symptoms after her previous injection. Exhibit 9 at 3. Dr. Nutini advised Ms. Sugranez to continue with home exercises. Id. at 4.

On June 4, 2019, Ms. Sugranez reported to Dr. Nutini that she was "doing better," but still felt "mild-to-moderate" pain, rated as 5/10, with abduction of the arm and sleeping on her left side. Exhibit 9 at 15. Dr. Nutini noted that Ms. Sugranez had full range of motion of her left shoulder but a painful arc. Id. Dr. Nutini educated Ms. Sugranez about exercises to perform at the gym, and he instructed her to follow up on an as-needed basis. Id. at 16.

### E.    Remaining Medical Records

Ms. Sugranez continued to seek treatment for her shoulder problems periodically. The treatment culminated in an operation to repair her rotator cuff. See Exhibit 14 at 5-6 (June 12, 2020). However, these records do not meaningfully inform the disputed issues. For details, see Pet'r's Am. Br. at 6-7 and Resp't's Am. Br. at 10-11. Although Ms. Sugranez was directed to file updated medical records, see Orders, issued Nov. 29, 2022 and Mar. 9, 2023, she has not.

## II.    Procedural History

Initially represented by Attorney Carol Gallagher, Ms. Sugranez initiated this case by filing a petition on August 13, 2019. The petition alleged that the flu vaccination caused "a left

shoulder injury (SIRVA) or aggravation injury and cellulitis/my[o]sitis." Pet., filed Aug. 13, 2019, at preamble.  The case was originally assigned to the special processing unit of the Office of Special Masters.

While in the special processing unit, Ms. Sugranez submitted additional material.  The Secretary recommended that compensation be denied.  Resp't's Rep., filed pursuant to Vaccine Rule 4, on Jan. 8, 2021.  Thus, the case left the special processing unit in August 2021.

In September 2021, Attorney Phyllis Widman replaced Ms. Gallagher as attorney of record for Ms. Sugranez.  Ms. Widman has acted as petitioner's counsel of record since that date.

About six months later, Ms. Sugranez supported her case with a first report from Dr. Anapolle.  Exhibit 19.  Dr. Anapolle generally opined that Ms. Sugranez suffered from SIRVA. In the ensuing status conference, Ms. Widman confirmed that Ms. Sugranez is claiming only an on-Table injury.  She was not claiming an off-Table injury.  Order, issued Mar. 11, 2022.

The parties further developed their positions regarding SIRVA through a series of reports from experts.  See Exhibit A (Dr. Cagle's first report, filed July 5, 2022); Exhibit 25 (Dr. Anapolle's second report, filed Aug. 4, 2022); Exhibit C (Dr. Cagle's second report, filed Oct. 7, 2022); Exhibit 26 (Dr. Anapolle's third report, filed Oct. 28, 2022).  The details of their opinions are presented in the analysis sections below.

The parties were instructed to advocate through briefs.  This order directed the parties to state whether Ms. Sugranez met the regulatory definition of SIRVA.  Order, filed Mar. 9, 2023, at 5.  The March 9, 2023 order also commented that although Ms. Sugranez had pled that the vaccines caused her to suffer cellulitis, Ms. Sugranez did not present an opinion from Dr. Anapolle that her cellulitis lasted more than six months.  Id. at 5 n.4.

The parties followed the March 9, 2023 order.  Ms. Sugranez submitted her primary brief on May 9, 2023 and her reply on August 9, 2023.  In between, the Secretary argued his position through a brief filed on July 10, 2023.  Although these briefs have been reviewed, this Decision cites primarily to the amended briefs, which are discussed below.

To confirm that Ms. Sugranez knowingly decided not to pursue an off-Table claim, she was instructed to submit an affidavit.  Order, issued May 2, 2024.  To discuss the option, a status conference was held.  Ms. Sugranez was given an opportunity to consult Dr. Anapolle about a new report.  Order, issued July 9, 2024.

On August 1, 2024, Ms. Sugranez filed three items.  First, she submitted a new report from Dr. Anapolle.  Dr. Anapolle suggested that the vaccine's needle caused an infection in Ms. Sugranez's bursa.  Exhibit 28.  Next, Ms. Sugranez filed an amended petition, which asserted (a) an on-Table SIRVA claim, (b) an off-Table causation-in-fact claim, and (c) a significant aggravation claim.  Last, Ms. Sugranez argued her case through her amended brief.  Ms. Sugranez did not present any argument that the vaccines significantly aggravated a pre-existing problem.

Another status conference was held on August 12, 2024. Ms. Sugranez was directed to amend her petition to remove the significant aggravation claim as she had not presented any evidence to support it. She did so on August 20, 2024. The August 20, 2024 petition is the operative petition.

In response to Dr. Anapolle's most recent report, the Secretary submitted a third report from Dr. Cagle. Exhibit D. Dr. Cagle disputed the theory that Ms. Sugranez suffered an infection in her bursa. The Secretary also presented his arguments in an amended brief, filed Sep. 30, 2024.

Ms. Sugranez requested an opportunity for another response from Dr. Anapolle. In the ensuing status conference, the parties discussed that a significant issue was whether Ms. Sugranez suffered an infection in her bursa. Because evidence for (or against) that proposition could be found in the medical records, Ms. Sugranez was not permitted to obtain another response from Dr. Anapolle. See Order, issued Oct. 28, 2024.

Ms. Sugranez identified medical records that arguably supported the assertion that she suffered an infection in her bursa as part of her Amended Reply, filed Nov. 12, 2024. The submission of the amended reply makes the case ready for adjudication.

Because both parties have had a fair opportunity to present their evidence and their arguments, an adjudication based upon the papers is appropriate. See Kreizenbeck v. Sec'y of Health & Hum. Servs., 945 F.3d 1362, 1365 (Fed. Cir. 2018).

## III.    Elements of Compensation

To receive entitlement to compensation, petitioners must establish five elements, which are found in 42 U.S.C. § 300aa–11(c)(1)(A)-(E). A frequently disputed element is causation, which corresponds to paragraph (C). Congress authorized petitioners to establish causation in two ways. First, petitioners may establish that a vaccinee received a vaccine listed on the Vaccine Injury Table and developed a specific injury within a specified amount of time. 42 U.S.C. § 300aa–11(c)(1)(C)(i). When such on-Table claims are successfully established, then causation is presumed. Second and alternatively, petitioners may establish that a covered vaccine caused an injury not listed in the Vaccine Injury Table. 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I).

In this case, Ms. Sugranez's claim that she suffered an on-Table injury is addressed in Section VI, below. The following section, Section VII, evaluates Ms. Sugranez's off-Table claim.

## IV.    Standards for Adjudication

A petitioner is required to establish her case by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

Proof of medical certainty is not required. <u>Bunting v. Sec'y of Health & Hum. Servs.</u>, 931 F.2d 867, 873 (Fed. Cir. 1991).

Distinguishing between "preponderant evidence" and "medical certainty" is important because a special master should not impose an evidentiary burden that is too high. <u>Andreu v. Sec'y of Health & Hum. Servs.</u>, 569 F.3d 1367, 1379-80 (Fed. Cir. 2009) (reversing special master's decision that petitioners were not entitled to compensation); <u>see also</u> <u>Lampe v. Sec'y of Health & Hum. Servs.</u>, 219 F.3d 1357 (Fed. Cir. 2000); <u>Hodges v. Sec'y of Health & Hum. Servs.</u>, 9 F.3d 958, 961 (Fed. Cir. 1993) (disagreeing with dissenting judge's contention that the special master confused preponderance of the evidence with medical certainty).

## V.      **Analysis Part One: Qualification of Experts**

Special masters may consider the relative expertise of testifying experts when weighing the value of their opinion.  <u>See</u> <u>Depena v. Sec'y of Health & Hum. Servs.</u>, No. 13-675V, 2017 WL 1075101 (Fed. Cl. Spec. Mstr. Feb. 22, 2017), <u>mot. for rev. denied</u>, 133 Fed. Cl. 535, 547-48 (2017), <u>aff'd without op.</u>, 730 Fed. App'x 938 (Fed. Cir. 2018); <u>Copenhaver v. Sec'y of Health & Hum. Servs.</u>, No. 13-1002V, 2016 WL 3456436 (Fed. Cl. Spec. Mstr. May 31, 2016), <u>mot. for rev. denied</u>, 129 Fed. Cl. 176 (2016).

Ms. Sugranez argues that Dr. Anapolle has superior qualifications.  Pet'r's Am. Br. at 20-22.  The Secretary disagrees.  Resp't's Am. Br. at 13 n.6.

It appears that the training, background, and experience of Dr. Anapolle and Dr. Cagle are roughly comparable.  If anything, Dr. Cagle possesses better qualifications because Dr. Cagle, unlike Dr. Anapolle, has written articles about shoulder injuries.  <u>Compare</u> Exhibit B (Dr. Cagle's curriculum vitae) at 3-4 with Exhibit 27 (Dr. Anapolle's curriculum vitae) at 3.

## VI.      **Analysis Part Two: On-Table Claim**

Ms. Sugranez's primary claim is that she meets the regulatory definition for shoulder injury related to vaccine administration / SIRVA.  Petitioners bear this burden.  <u>See</u> <u>Waterman v. Sec'y of Health & Hum. Servs.</u>, 123 Fed. Cl. 564, 574 (2015).

As part of his authority to place injuries on the Vaccine Table (<u>see</u> <u>Terran v. Sec'y of Health & Hum. Servs.</u>, 195 F.3d 1302, 1314-15 (Fed. Cir. 1999)), the Secretary has explained what constitutes a SIRVA.

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

Here, of the four elements of SIRVA, the parties dispute all four. See Pet'r's Am. Br. at 11-13; Resp't's Am. Br. at 13-17.

Ms. Sugranez has failed to meet her burden to show with preponderant evidence that she suffered from a shoulder injury related to vaccine administration as the Secretary has defined that concept. "SIRVA is caused by an injury to the musculoskeletal structure of the shoulder (*e.g.* tendons, ligaments, bursae, etc.)." 42 C.F.R. § 100.3(c)(10). The Secretary has further required that SIRVA develop within 48 hours of the vaccination. 42 C.F.R. § 100.3(c)(10)(ii).

Ms. Sugranez did develop an adverse reaction to the August 26, 2018 vaccine within 48 hours. However, her reaction was cellulitis. See Exhibit 4 at 114 (Dr. Glasser on Aug. 31, 2018); Exhibit 5 at 104 (admission to the hospital on Sep. 2, 2018). Dr. Dunn's August 2, 2020 "To Whom It May Concern" Letter states: "The left shoulder pain during the second time interval was clearly caused by a reaction to a vaccine that had been given which apparently resulted in an infection which was treated with antibiotics and also improved." Exhibit 12.

Although Ms. Sugranez argues that "Cellulitis pain is inextricable from SIRVA pain" (Pet'r's Am. Reply at 7), she provides no support for this argument. She does not cite any evidence, such as an opinion from a doctor. She also does not cite any cases. Her argument is, therefore, unpersuasive. Given that the Secretary has defined SIRVA as a "an injury to the musculoskeletal structure" and cellulitis is not an injury to the tendons, ligaments or bursae, Ms. Sugranez's cellulitis does not meet the regulatory definition of SIRVA.[2]

Furthermore, while Ms. Sugranez was hospitalized for cellulitis, she did not display manifestations typical for SIRVA. For example, on Sep. 3, 2018, Dr. Oliveria found that she had "Normal range of motion." Exhibit 5 at 108. Likewise, on September 4, 2018, Dr. Osondu also

---

[2] For petitioners to receive compensation for a vaccine-caused cellulitis, petitioners must establish that the cellulitis met the severity requirement found in 42 U.S.C. § 300aa–11(c)(1)(D). See, e.g. Cerasuolo v. Sec'y of Health & Hum. Servs., No. 20-1268V, 2023 WL 3221778 (Fed. Cl. Spec. Mstr. May 3, 2023). Here, Ms. Sugranez has not developed a claim that her cellulitis lasted more than six months. See Order, issued March 9, 2024, at 5 n.4; Pet'r's Am. Br. at 17 (acknowledging that Ms. Sugranez's cellulitis resolved).

found Ms. Sugranez had "Normal range of motion" and "normal strength." Id. at 112.  Thus, Ms. Sugranez does not present a case in which cellulitis problems overlapped with SIRVA problems.  But see Ash v. Sec'y of Health & Hum. Servs., No. 20-0867V, 2024 WL 2938811, at *6 (Fed. Cl. Spec. Mstr. May 8, 2024).

Due to the finding that the pain that Ms. Sugranez experienced within two days of her vaccination was due to only her cellulitis, resolution of other issues is not required.  For example, the parties extensively dispute whether Ms. Sugranez's previous shoulder pain could explain shoulder problems she experienced after the vaccination.  See Pet'r's Am. Br. at 11-13; Resp't's Am. Br. at 13-15; Pet'r's Am. Reply at 3-6.  Ms. Sugranez's treating doctors, including Dr. Dunn who saw her before the vaccination and after the vaccination, considered the problem for which she was hospitalized to be cellulitis, not a musculoskeletal injury.  See Exhibit 4 at 128 (Dr. Dunn referring Ms. Sugranez to a specialist in infectious diseases on Sep. 23, 2018).

For these reasons, Ms. Sugranez has not established that she suffered SIRVA.  The finding that Ms. Sugranez has not shown an on-Table injury leaves open the question as to whether she suffered an off-Table injury.  This issue is considered next.

## VII.    Analysis Part Three:  Off-Table Claim

When petitioners do not succeed in establishing that they suffered an injury as defined in the Vaccine Table, they may pursue a claim that a vaccine was the cause-in-fact of their injury.  42 U.S.C. § 300aa–11(c)(1)(C)(ii).  The elements of a cause-in-fact claim are well known.  Petitioners bear a burden "to show by preponderant evidence that the vaccination brought about [the vaccinee's] injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury."  Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).

Here, Ms. Sugranez presented evidence and argument about an off-Table claim only after she submitted her original reply brief.  Her evidence primarily consists of Dr. Anapolle's fourth report.  Exhibit 28.  The Secretary challenged Dr. Anapolle's opinion primarily through Dr. Cagle's third report.  Exhibit D.

Ms. Sugranez's causation-in-fact claim fails because of the interplay between prongs one and two.  For prong one, Dr. Anapolle opined that Ms. Sugranez suffered an "an infection in the bursa, . . . which was caused by the insertion of the needles that disrupted the subacromial space."  Exhibit 28 at 2.  Dr. Anapolle maintained that penetration by a needle can cause the infection in the bursa.  Id.

For purposes of analysis, it is assumed that Ms. Sugranez presented a reliable and persuasive theory that the penetration of a vaccine needle can cause infection in the bursa.  But, finding that Ms. Sugranez meets prong one does not end the analysis.  She must also establish the other two Althen prongs and her case falters on prong 2.  "If a special master can determine that a petitioner did not suffer the injury that she claims was caused by the vaccine, there is no

reason why the special master should be required to undertake and answer the separate (and frequently more difficult) question whether there is a medical theory." Hibbard v. Sec'y of Health & Hum. Servs., 698 F.3d 1355, 1365 (Fed. Cir. 2012)

As the Secretary and Dr. Cagle have persuasively asserted, the evidence does not support a finding that Ms. Sugranez suffered an infection in her bursa. See Resp't's Am. Br. at 21; Exhibit D at 2. According to Dr. Cagle, "an infection in the bursa/shoulder joint, or any major joint for that matter, represents a well understood surgical urgency/emergency. This is the type of knowledge one cannot graduate from surgical training without. . . .There is no medical evidence of a joint infection." Exhibit D at 1. This explanation appears reasonable. This topic was discussed in the October 28, 2024 status conference. As discussed there, Ms. Sugranez was permitted to identify evidence showing she had an infection.

In a literal sense, Ms. Sugranez complied with the order because she cited approximately 16 instances in which a medical record discussed infection. The more recent medical records state essentially "no infection." E.g. Exhibit 13 at 55. Thus, these records do not assist Ms. Sugranez in establishing that she suffered an infection in her bursa.

The remaining records were generated in the context of Ms. Sugranez's treatment for cellulitis. E.g. Exhibit 5 at 13, 45, and 135. This aspect of Ms. Sugranez's medical history is not disputed. The parties agree that she suffered from cellulitis. The disputed issue is whether she suffered an infection in her bursa. The series of citations in Ms. Sugranez amended reply do not establish that she suffered an infection in her bursa.

Accordingly, there is a mismatch between what Ms. Sugranez's expert stated the vaccine can cause (an infection in her bursa) and what Ms. Sugranez experienced (an infection on her skin). In this situation, Ms. Sugranez has failed to demonstrate all the Althen prongs. See Capizzano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1327 (Fed. Cir. 2006) (the second Althen prong is "not without meaning"). Thus, resolving arguments over whether Ms. Sugranez later developed age-related deterioration in her shoulder joint is not required. See Resp't's Am. Br. at 17, 28; Pet'r's Am. Reply at 9.

## VIII. Conclusion

Before the vaccination, Ms. Sugranez was found to be suffering from degenerative disc disease for which she received a steroid injection in her left shoulder. Within a few days of the vaccination, Ms. Sugranez developed cellulitis, which, fortunately, resolved with treatment. Later, Ms. Sugranez experienced more problems in her shoulder. With this chronology, Ms. Sugranez may believe in good faith that the vaccination harmed her.

However, this sincerity does not dictate an award of compensation. Ms. Sugranez must support her claims with preponderant evidence. As discussed above, the evidence falls short.

The Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed. Information about filing a motion for review, including the deadline, can be found in the Vaccine Rules, which are available on the website for the Court of Federal Claims.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master