# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 19-1183V
(Filed: August 25, 2026*)

| | |
|---|---|
| **DORA I. SUGRANEZ**, | ) |
| *Petitioner*, | ) |
| v. | ) |
| **SECRETARY OF HEALTH AND HUMAN SERVICES**, | ) |
| *Respondent*. | ) |

*Phyllis Widman*, Widman Law Firm LLC, Linwood, NJ, for petitioner.

*Madelyn E. Weeks*, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, for respondent. With her on the brief were *Brett A. Shumate*, Assistant Attorney General; and *Jonathan D. Guynn*, Acting Director, *Heather L. Pearlman*, Deputy Director, and *Lara A. Englund*, Assistant Director, Torts Branch, Civil Division, U.S. Department of Justice.

**OPINION AND ORDER**

***BONILLA, Judge***.

Petitioner Dora I. Sugranez seeks review of an Office of Special Masters (OSM) decision denying entitlement under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10 to 300aa-34. Specifically, Ms. Sugranez challenges the special master's exclusive focus on her cellulitis diagnosis in evaluating her Vaccine Injury Table shoulder injury related to vaccine administration (SIRVA) claim. For the reasons set forth below, and pursuant to Vaccine Rules 27(c) and 28(b), the Court remands this matter to OSM for reevaluation of whether Ms. Sugranez has proven a Table SIRVA.

* In accordance with Rule 18(b) of the Vaccine Rules of the United States Court of Federal Claims, this opinion was initially filed under seal on August 10, 2026, to afford the parties the opportunity to propose redactions based upon privacy concerns. No proposed redactions were submitted.

**BACKGROUND**

Ms. Sugranez received influenza and pneumococcal pneumonia vaccines in her left shoulder at a local pharmacy on August 26, 2018. She reportedly experienced pain in her left arm "[i]mmediately after receiving the vaccines," prompting her to seek medical attention from her primary care physician five days later, on August 31, 2018. ECF 7-2 at 1; *accord* ECF 101 at 1. During this visit, Ms. Sugranez reported redness and swelling that began in her left arm within twenty-four hours after the vaccines, in addition to dizziness and chills. Her doctor's preliminary assessment included "Cellulitis – L[eft] upper arm" and "PAIN IN LEFT SHOULDER." ECF 7-4 at 113.

The next day, on September 1, 2018, Ms. Sugranez sought medical care at the emergency department of a local hospital. She "present[ed] with arm pain," and further evaluation revealed muscle and joint pain. ECF 7-5 at 23. Ms. Sugranez was diagnosed with "[c]ellulitis of left upper arm" and "[a]rm pain-swelling," prescribed medication, and discharged. *Id.* at 22, 25. When she returned the next day complaining of "left arm pain and swelling," she was admitted for "cellulitis that failed outpatient antibiotics." *Id.* at 104. During her four-day hospitalization, a progress note recorded "[n]ormal range of motion, normal strength, left arm erythema but significantly improved from admission." *Id.* at 112; *accord id.* at 114 ("Marked improvement in redness and regression seen."). Ms. Sugranez was discharged on September 5, 2018, with a final diagnosis of "[c]ellulitis of left upper extremity" and instructed to continue her course of antibiotics. *Id.* at 114.

The pain persisted. On September 24, 2018, after receiving a referral from her primary care physician, Ms. Sugranez consulted a pain specialist, "complaining of left arm and neck pain." ECF 7-8 at 4–5. Her diagnosis: left shoulder pain, neuritis, and myalgia. Three days later, Ms. Sugranez consulted a physical therapist who assessed her as having limited range of motion in her left arm and recommended physical therapy. When Ms. Sugranez returned to the pain specialist on October 24, 2018, she reported "minimal left arm pain." *Id.* at 3. During a November 21, 2018 follow-up visit with the pain specialist, however, Ms. Sugranez complained of "an escalation in symptoms, rating her pain 5–6/10." *Id.* She also reported that physical therapy "was minimally helpful" in improving her range of motion, *see id.*, notwithstanding her physical therapist's recent documentation of "no functional limitation in [range of motion] or strength," ECF 7-7 at 44.

Ms. Sugranez continued seeking medical treatment. On January 7, 2019, she consulted an infectious disease specialist who suspected the August 26, 2018 vaccines "may have caused some nerve damage and that may be the cause of her pain" and ordered an MRI to rule out a possible infection. ECF 7-3 at 7. An MRI performed four days later yielded normal results. A month later, Ms. Sugranez consulted an orthopedist who posited that "she had a painful injection from the flu shot that became infected. She then did not move the arm much and wound up with rotator

cuff impingement." ECF 7-9 at 11. He administered a subacromial steroid injection. The treatment failed to resolve the pain. Throughout the balance of 2019 and into 2020, Ms. Sugranez continued seeking medical treatment for her persistent shoulder pain, ultimately having rotator cuff surgery on June 12, 2020.

Ms. Sugranez initiated this action on August 13, 2019. In an amended petition filed August 1, 2024, she asserted a Table SIRVA claim, an off-Table causation-in-fact claim, and a significant aggravation claim. Following a status conference where the special master noted the dearth of evidence supporting the significant aggravation claim, Ms. Sugranez jettisoned that claim in her August 20, 2024 operative petition. On May 29, 2026, OSM denied compensation. Addressing Ms. Sugranez's Table claim, the special master found that she suffered from cellulitis rather than SIRVA and that she was not entitled to compensation for cellulitis because it did not meet the severity requirement codified in 42 U.S.C. § 300aa-11(c)(1)(D) (i.e., cellulitis did not last more than six months). As to the off-Table claim, the special master concluded that "the evidence does not support a finding that Ms. Sugranez suffered an infection in her bursa." ECF 107 at 11 (citation omitted). Ms. Sugranez timely filed a motion for review on June 28, 2026, limited to OSM's Table analysis.

## DISCUSSION

### I. Standard of Review

On a motion for review, this Court will uphold a special master's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Sheller v. Sec'y of Health & Hum. Servs.*, 121 F.4th 1301, 1305 (Fed. Cir. 2024) (first quoting *James-Cornelius ex rel. E.J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021); and then citing 42 U.S.C. § 300aa-12(e)(2)(B)). The Court "do[es] not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder." *Winkler v. Sec'y of Health & Hum. Servs.*, 88 F.4th 958, 963 (Fed. Cir. 2023) (quoting *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011)). A special master's application of law, however, is reviewed de novo. *Sheller*, 121 F.4th at 1305 (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). As the movant, Ms. Sugranez bears the burden of demonstrating reversible error in the special master's decision. *Simanski v. Sec'y of Health & Hum. Servs.*, 115 Fed. Cl. 407, 457 (2014), *aff'd sub nom.*, *Simanski v. Dep't of Health & Hum. Servs.*, 601 F. App'x 982 (Fed. Cir. 2015). Where the special master did not commit the asserted error, the special master's decision will be upheld. *See Dixon v. Sec'y of Dep't of Health & Hum. Servs.*, 61 Fed. Cl. 1, 12 (2004).

## II. Analysis

In her motion for review, Ms. Sugranez raises two objections: first, that in finding her adverse reaction to the vaccines was cellulitis alone, the special master improperly ignored expert testimony that the vaccines caused both cellulitis and bursitis; and second, that the special master did not make a factual finding as to when Ms. Sugranez's musculoskeletal shoulder pain—as distinct from cellulitis-related shoulder pain—began.[1] The record plainly shows that Ms. Sugranez suffered pain in her left arm both within the first forty-eight hours after the vaccine administration and after her cellulitis resolved, but it is unclear what pain began when. If cellulitis was the sole cause of Ms. Sugranez's discomfort in the first forty-eight hours and the musculoskeletal pain emerged later, then Ms. Sugranez does not have a viable Table claim. *See* 42 C.F.R. § 100.3(c)(10). But if, as Ms. Sugranez contends, both cellulitis-related and musculoskeletal shoulder pain began in the first forty-eight hours after receiving the vaccines, a viable Table SIRVA claim is possible.

The special master's conclusion that Ms. Sugranez did not suffer from bursitis is a factual finding subject to review under the arbitrary-and-capricious standard. It was not arbitrary or capricious. Contrary to Ms. Sugranez's contention, the special master did not overlook the theory advanced by her expert, David M. Anapolle, MD, that the same needle insertion caused both cellulitis (a non-compensable injury because it lasted fewer than six months)[2] and bursitis (a potentially compensable injury). Rather, the special master determined that Ms. Sugranez's injury was "only . . . cellulitis." ECF 107 at 10. In support, the special master cited the countervailing opinion of the government's proffered expert, Paul J. Cagle, Jr., MD, and Ms. Sugranez's failure to substantiate the bursitis claim after Dr. Anapolle's theory fell under scrutiny during an October 28, 2024 OSM status conference.[3] That

---

[1] The government accurately notes that the special master need only decide whether pain began within forty-eight hours after vaccine administration; the special master need not determine exactly when pain began. *See Gothers v. Sec'y of Health & Hum. Servs.*, 179 Fed. Cl. 552, 556 (2024). But that is tangential to the issue presented. It is uncontroverted that (1) Ms. Sugranez experienced cellulitis-related pain in the first forty-eight hours after vaccination and (2) at some point, Ms. Sugranez experienced musculoskeletal pain. The question is whether Ms. Sugranez's musculoskeletal pain began within forty-eight hours of receiving the vaccines.

[2] For an injury to be compensable, a person must have

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury, or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

42 U.S.C. § 300aa–11(c)(1)(D). None of these are alleged here regarding Ms. Sugranez's cellulitis.

[3] Ms. Sugranez's contention that Dr. Cagle's opinion does not squarely contradict Dr. Anapolle's theory of traumatic, inflammatory bursitis is undermined by Dr. Cagle's September 6, 2024 letter titled "Medical Expert Response." *See* ECF 102-1 ("Dr. Anapolle's statements are without medical record evidence or evidence-based support.").

is, the special master weighed the competing expert opinions against one another and permissibly found the government's expert more persuasive. To the extent Ms. Sugranez objects to the special master focusing on Dr. Anapole's fourth opinion rather than addressing each of his expert's reports, it was not arbitrary and capricious for the special master to concentrate on her expert's most recent opinion. The Court declines the invitation to second-guess the special master's assessment of this evidence. *See Winkler v. Sec'y of Health & Hum.* Servs., 88 F.4th 958, 963 (Fed. Cir. 2023) ("[Reviewing courts] do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder." (quoting *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011))).

Ms. Sugranez's second argument, however, is more vexing, as it is unclear on this record whether the special master improperly injected a temporal limited-range-of-motion requirement into the standard of proof for a Table SIRVA claim. Entitlement to compensation for a Table SIRVA claim requires preponderant evidence of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. [nerve conduction study/electromyography] or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10), *cited in* 42 U.S.C. § 300aa-13(a)(1)(A). Critical here, a petitioner does not have to prove that the "reduced range of motion" specified in subparagraph (iii) "occur[red] within the specified time-frame" identified in subparagraph (ii). As explained by OSM in a different matter:

> [T]o prove a Table SIRVA injury, a petitioner must only experience pain in that specified timeframe . . . . Although a [p]etitioner must experience *some* reduced range of motion as well, that symptom need not appear in the first 48 hours after vaccination — and in many SIRVA cases, it does not.

*Ash v. Sec'y of* Health *& Hum. Servs.*, No. 20-867, 2024 WL 2938811, at *7 (Fed. Cl. Spec. Mstr. May 8, 2024) (citing 42 C.F.R. § 100.3(c)(10)(ii)-(iii)); *accord Martin v. Sec'y of Health & Hum.* Servs., No. 22-384, 2025 WL 4063243, at *18 (Fed. Cl. Spec. Mstr. Dec. 19, 2025) ("The Table does not require that a petitioner's reduced [range of motion] must occur within forty-eight hours to prove causation."); *Portee v. Sec'y of Health & Hum. Servs.*, No. 16-1552, 2018 WL 5284599, at *11 (Fed. Cl. Spec. Mstr. Sept. 14, 2018) ("[F]or SIRVAs, pain is the only symptom required to occur within the time frame specified on the Table.").

Here, there is evidence that Ms. Sugranez experienced limited range of motion, though it was not recorded until thirty-two days post vaccination, on September 27, 2018. The special master appears to have used Ms. Sugranez's full range of motion in the immediate aftermath of the vaccine administration as evidence against a Table SIRVA:

> While Ms. Sugranez was hospitalized for cellulitis, she did not display manifestations typical for SIRVA. For example, on September 3, 2018 [eight days post vaccination], Dr. Igor C. Oliveira found that she had "Normal range of motion." ECF 7-5 at 108. Likewise, on September 4, 2018 [nine days post vaccination], Dr. Blessing U. Osondu also found Ms. Sugranez had "Normal range of motion" and "normal strength." *Id.* at 112. Thus, Ms. Sugranez does not present a case in which cellulitis problems overlapped with SIRVA problems. *But see Ash*, 2024 WL 2938811, at *6.

ECF 107 at 9–10 (cleaned up). As indicated by the special master's citation to *Ash* as contrary authority, this reasoning seems at odds with the regulatory reading recognized in *Ash* and the other OSM cases cited above; specifically, that the forty-eight-hour window applies only to onset of pain, not limited range of motion. Indeed, that is the correct way to read 42 C.F.R. § 100.3(c)(10). Under the plain language of the regulation, the temporal requirement of subsection (ii) is limited to the onset of pain and does not extend to the reduced range of motion noted in subsection (iii), which addresses the location of qualifying symptoms.

To be clear, the special master did not rely exclusively on Ms. Sugranez's range of motion in finding that she did not suffer a compensable Table SIRVA. Referencing the medical data presented, the special master essentially concluded that all roads lead to Ms. Sugranez's cellulitis diagnosis (i.e., a bacterial infection), to the exclusion of the contemporaneously claimed injury to the musculoskeletal structure of her shoulder. *See* ECF 107 at 9–10. In reaching this conclusion, as quoted *supra*, the special master seemingly relied, at least in part, on Ms. Sugranez's reported "normal range of motion" in the immediate aftermath of her August 26, 2018 vaccinations. Insofar as the special master's finding that Ms. Sugranez did not suffer a Table SIRVA is based on this timing, it is contrary to law.

Because it is unclear the extent to which OSM's legal error may have infected its conclusion, the most prudent course is vacatur and remand. *See Chu v. Sec'y of Health & Hum. Servs.*, 180 Fed. Cl. 37, 58 (2026) (citing *Stratton v. Sec'y of Health & Hum. Servs.*, 138 F.4th 1368, 1372 (Fed. Cir. 2025)). Vacatur will, however, be limited to Ms. Sugranez's Table SIRVA claim. On remand, the special master must reconsider Ms. Sugranez's Table SIRVA claim without regard to whether she exhibited normal limited range of motion within forty-eight hours of the administration of the vaccines.[4]

## CONCLUSION

For the foregoing reasons, petitioner's motion for review (ECF 110) is granted-in-part and denied-in-part. In accordance with Vaccine Rules 27 and 28(b), OSM's decision (ECF 107) is vacated-in-part and upheld-in-part, and this matter is remanded to OSM for a period of ninety days for further action consistent with this order.

It is so **ORDERED**.

Armando O. Bonilla
Judge

[4] To be clear, the identified error and corresponding relief are relatively narrow and may well have no bearing on the special master's ultimate determination of whether Ms. Sugranez is entitled to compensation.